The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good afternoon, Council. This is case number 4-24-1262, People v. Jalen Bones. Before we begin with the argument, could we have appearances first for the appellant? Your Honor, my name is Anne Rose Danek with the Office of the State Appellate Defender for the appellant Jalen Bones. Thank you. And for the appellee? First name Allison Page, last name Brooks on behalf of the people. Thank you. Ms. Danek, you may proceed with your argument. Thank you and good afternoon, Your Honors. Good afternoon, Council, and may it please the Court. Mr. Bones raises three issues on appeal. In this case, the second and the third issue relate to a hearsay statement by a missing witness Rashad Hill. The first issue involves the dismissal of a juror near the end of trial, and it has two parts. First, that the judge abused his discretion in dismissing this juror based solely on speculation. And second, that the state ambushed the defense with allegations about the juror, preventing the defense from having notice or fair opportunity to counter the state's argument as to why they wanted this juror gone. With regard to the state's actions with this juror, the issue is unprecedented in the state of Illinois. This was a week-long murder trial, and at the end of the day on a Friday after an entire week of trial, the state said that they had been concerned about a juror who was looking and smiling at the defendant since earlier in the week. It came out what they said that they had waited not one day, not two days, not three days to bring this to the attention of anyone, either the defense or to the court, but instead they chose to enlist some plainclothes police officers to sit in the gallery to count the number of smiles that this juror and looks that this juror had toward the defendant. Does that really matter? I mean, what if the tables were turned and the defense, you had defendants' family and friends in the gallery doing the same thing? I mean, does it really matter who was doing what as long as this was information that was presented to the court at some point? It does matter, Your Honor, and part of the right to an impartial jury means that the prosecution and the defense have to compete on the same level. And the frustrating thing about this situation is that the prosecutor is not a typical litigant. The prosecutor's duty is to look out for all of the people of the state of Illinois, and this includes the defendant. And so to the extent that the prosecution understands their role and the prosecution's interest is not just in obtaining a conviction or getting a juror off using any tactics at all, it's to present a fair opportunity for this trial and to actually pass it. Why isn't it fair? Because the goal of the prosecution should be to ensure that the jury is impartial and to make an effort. That's exactly what they were doing. After they sat and they waited on it for three days, bringing in witnesses so that they had six people, essentially. Let's assume for a minute that they would have, the very first time it happened, they immediately said something. Your argument would be, well, where's your evidence? No, Your Honor. Then there would be an opportunity to take a look at that. They could have said- But you can't because there's no history to base it on. It would be them raising it the very first time and there'd be nothing to substantiate what they were claiming. Do you think it matters that the court itself said, you know, I was going to bring this up myself? Once the state mentioned it, the court said, okay, wait a minute, wait a minute. Because he said, I was going to actually bring this up myself because I've been noticing it for the last two days. And honestly, after 25 years on the bench, I have never seen anything like this. You don't think that's relevant? I do, Your Honor. But the first thing that the judge said was that I've noticed something about a witness, but not anything improper. After 26 witnesses by the state, the judge did say, I was eventually going to bring this up. You know, the state was halfway through their final witness. It's not clear when the judge would have thought it's appropriate to bring up the judge's concerns. The judge raised his concerns essentially about the lack of attention. I think he said after the evidence was closed, he was going to bring it up. Correct. He was going to allow this jury- when the judge was going to bring it up. Yes, Your Honor. I mean, unless I brought it up at the beginning of the day on Monday, that was the only point. Essentially, the judge, rather than, you know, if he's been watching something for two days and thought that the way that this juror paid attention was so egregious, he had not seen anything for 25 years, he gave no admonishment to that juror. He said nothing about trying to ensure that everyone on the jury was paying attention. What actually happened really goes counter to what the judge said. With all due respect to that judge, he did change his ruling essentially from the beginning where he said, well, I didn't really notice anything improper to this is the worst thing I've seen in 25 years. And that's an odd- We're questioning the credibility of the court now. Your Honor, we're arguing in part that the judge abused his discretion when he made the point to remove this juror from the jury. Yes, we are arguing that he abused his discretion. Well, the court's comment that you just referenced, it also came after he took the sworn testimony of the witnesses who provided this additional detail. Couldn't he have had that additional information in mind when he said he hadn't seen such conduct in that period of time? He could have, Your Honor, and that was not enough information. This was speculation on the part of these witnesses that the state had brought in, essentially setting this up for a situation of confirmation bias. Even one of the deputies said that the state was aware of what was going on and wanted, quote, confirmation. They said certainly they weren't told what to say, but they were made aware that they were not neutral witnesses, that they were- that the state had put this on his radar, and so he's then tasked with hearing what was happening himself. I'm so sorry, Your Honor. Could you repeat that? You referenced it as the state was wanting confirmation, and I think what the officer said was that they put this on my radar, and so then, yeah, I began looking at this and watching it myself, and I think he was the one who actually put down times that all of these things were happening. Yes, it was Deputy Beverland who had said he was told the state wanted confirmation about what was going on, and again, even if the state had brought in a hundred different witnesses to say, hey, this juror's smiling, and this is what we think it means. It's more than just a, hey, how are you doing, kind of smile. There's nothing else. There's no- But actually, let's look at the end result. It really isn't the speculation about what was meant about the smile. That's not what the judge made his decision on. He made his decision based on what he observed and what the observations were of the witnesses that this witness was- or this juror was not paying attention to the evidence at all. In fact, several of them commented on how when everyone else in the courtroom was watching the witness or the exhibit or whatever it was that was being presented, this juror was sitting and smiling or gazing at the defendant, and he was either smiling and gazing at her or vice versa. Yes, and that was- So the court made the decision based on not on- we can speculate as to how much romance there was budding between the two, but on the fact that juror was just not paying attention to the evidence, and that was primarily the basis of the judge's ruling, was it not? It was a part of the basis of the judge's ruling, but this was also after the judge had made a finding that acknowledging, hey, I understand people process information differently. The jury had never been told, don't look at the defendant, don't be friendly or smile when they're coming and going from the courtroom. Acknowledging that any defendant is always told, hey, smile at the jury, be friendly if you notice smiling coming back and forth, and so after acknowledging that and still making no questions whatsoever of the juror to say, what was behind this? Were you paying attention? There was no inquiry made other than this speculation, and that goes- Let's look at it from a structural standpoint. At what stage would you need to be comfortable with asking the juror about this if there was the possibility that after questioning that juror, they're then going to go back into the jury room with the rest of the jurors, and you then have to concern yourself with what conversation is taking place when that juror goes back there? Sure, and they in fact did have to address that with regard to a second juror who was told why this first juror was dismissed. That's not our issue. Okay, so in regard to asking this juror and inquiring of this juror, that's simply a procedure that the court is required to make an inquiry and base it on more than mere suspicion. It's not required. It's considered a better practice to do it that way. It's not required. Certainly, it's not required. Number two, you have to take it from the perspective of the trial court. At what point do I have to be in my decision making as to whether I'm going to allow that juror to remain or not under circumstances like this, not something just innocuous? Under circumstances like this, how confident do I have to be in my determination that this juror is not going back into the jury room before I actually inquire of that juror? You understand what I'm saying? Yes, the judge has to be at a point to find that the juror has completely foreclosed their mind as to guilt or innocence because that's the standard. That's the standard that the party seeking removal has to make, that this person has such a fixed opinion. Not that they're smiling, not even that maybe they found this defendant good-looking or something like that. That's pure suspicion and speculation I think you're mixing the requirements necessarily for a challenge for cause and misconduct by a juror. Yes, there are two parts to the argument, Your Honor, and I apologize if I've confused the two. The way that the state went about this was tantamount to structural error in that they engineered this to be a one-sided challenge to this juror. There is no case in the state of Illinois that I'm aware of that is directly on point, but there is a Second District case and a Seventh Circuit case that deal with the state's use of a peremptory challenge mid-trial and they have said- This is more akin to a challenge for cause. This is where there's a challenge, there's evidence, and there's analysis before determination is made as opposed to just a perfunctory challenge and then excusal. This is not similar to a challenge. Had the state approached this in an appropriate manner, bringing it to the attention so that it could actually not have ambushed the defense with this sort of surreptitious mini-trial at the end of all of their witnesses? You keep referring to it as an ambush and as histrionic as that seems to sound, in reality what happened was the state wanted to make sure that had enough evidence of what they were suspecting to actually make a good faith challenge for that juror. I think it's pretty reasonable to assume the state understood the serious circumstance it was in, in wanting to remove a juror at the end of a trial and they sure don't want to do it without having sufficient evidence of the misconduct they claim is taking place. Coincidentally, the court has observed the same misconduct as well as the other three witnesses, which I would suggest makes it an even more reasonable justification that the jury or that the state was waiting until they felt they had sufficient evidence to bring it to the court's attention. And it's not clear why they wouldn't have wanted neutral observers that may have been by both sides to take a look and see what was going on. In fact, in his ruling... How would you do that? When the state acknowledged something, they thought this was concerning enough, that there's some smiles going on, that they're going to bring in their own witnesses to try to back this up. Why was it not brought to the attention of the court? What would have been the detriment to... Without advising the defense counsel? No, with advising the defense counsel. Okay, so now you advise defense counsel, defense counsel leans over and whispers to his client and they stop the process from taking place so that there's no evidence of what was going on. That presupposes that there was in fact something going on, that something was meant more than just the police officer's speculation about what these smiles meant. I think it was pretty evident from the record that there's a substantial amount of evidence as to what was going on. Now, as to what it meant, that's a whole different issue. That's not the fact that the court relied on. The court relied on the fact that she was not paying attention, period, to the evidence. And the actual record really speaks against the court's finding ultimately in that regard, because had the judge noticed something that egregious, why was there no admonishment? Why was no step taken at all by the judge? And so that really belies the court's ultimate conclusion as to this being something so egregious other than just not looking at some witnesses or putting your eyes on something other than directly staring at the witnesses. I do want to back up for a minute because I wanted to say that there's no allegation here that the prosecution did something intentionally malicious. Just as in a case if you have... Ambush is a neutral term? No, Your Honor. The result is different than the intent. And the intent of the state does not matter when there's this type of structural error requiring reversal. If you had a young defense attorney who zealously as possible represented her client but made such an error that it was ineffective, a new trial is granted. Ms. Dan, may I briefly ask you about prejudice? And I want you to assume a hypothetical here because I'm going to have a question that follows up on the hypothetical. Let's assume you have a murder case and during voir dire defense counsel uses up all of his peremptory challenges. And you're now to the point of questioning an alternate, the first alternate juror. First alternate juror is asked whether or not it would ever be appropriate as a defense in a murder case for the defendant to assert self-defense. And the alternate juror said, never should that be allowed. Challenge for cause is made by the defense attorney. It's overruled. That alternate juror is seated. Now during the course of trial, you have exactly what happened here. And you have a juror that is dismissed. You have the alternate juror now seated. The juror that was not excused for cause, even though he indicated could not follow the law, essentially. The case involved a claim of self-defense. Defendant is convicted. There you would have, if this was now on appeal, a claim that you could identify potential prejudice because you have now, you have a seated juror, this alternate juror that has now been seated to hear the case indicating that he would not be able to ever find self-defense in a murder case. That would be an instance where prejudice could be found. How was defendant prejudiced here by this the handling, the court's handling of the juror? There were three ways in which there was prejudice in this case. First, taking a look at how this alternate was re-seated, it should be noted that the judge, the parties eventually used the second alternate and not the first alternate. And what happened was at some point, the second alternate who was ultimately sat on the jury, the judge asked the parties if he could make sure that she understands she's to come back because, quote, I told her she could go. And so that creates an issue that when she's then told she can go, but then in fact brought back on and seated on the jury, that she needed to have been re-admonished in order for that to appropriately have happened. Where's the proof that that resulted in any prejudice to defendant? Your Honor, within the record, none other than it's established that that's an obligation of the court and that's a serious obligation. The Illinois Supreme Court has found that it's the job of the judge to make sure that there's been no outside influence, that there's been no looking at any kind of, you know, whether inadvertent or not, that this is a serious matter if a juror is dismissed and then brought back. So without that, you're saying it's prejudicial per se? That's one aspect that prejudiced the defendant in that that juror was not made sure that she was re-admonished when she came back. The second is a prejudice that was recognized by the court in People v. Brown, the second district, which is that the state has now had the opportunity to observe every juror's reaction to all of their evidence. And so the court found that the kind of mid-trial intervention of picking and choosing whether they ultimately wanted this juror off or not is just not compatible with, you know, these sort of proper functionings of safeguards that are put in place for the jury. And so at the end of the day, it's the party seeking removal that has to prove that this juror has completely foreclosed their mind as to guilt or innocence. There's an Illinois Supreme Court case, People v. Runge, where a juror was actually audibly cheering for a prosecution and the court said, hey, we need to question this juror. You know, this is more than just the guess about what smiles may or may not have meant. This is objectively something that is considered prejudicial to feel so strongly about one side. In Runge, the trial judge did question the juror. The complaint was that the judge didn't question the other jurors in regards to that juror's conduct. Correct. And analogously, even a statement that egregious required an inquiry of the juror. And just as in this case, these kind of allegations, if, you know, to the extent that there's serious, you know, speculation that this juror couldn't be fair and impartial, there needed to have been some inquiry as to the actual mindset of that juror, because the standard is very high. Once the jury is set, there's a presumption that this is a fair and impartial jury. And so to the extent that the state believes, you know, that they brought in these outside witnesses to count the number of smiles or looks, and then speculate about what those smiles and looks may have meant, that just simply does not meet that standard. In so many of these cases that have come up in the appellate court in the Illinois Supreme Court, the jurors question, the jurors available to question about their mindset as to whether or not they can be fair and impartial. And that resolves a lot of question, essentially, and speculation that is all that the judge otherwise would have had to rely on. And I, you know, And I'm sorry, you are, you are out of time. Thank you, Your Honor. I appreciate, I appreciate the time. Okay, you'll have time and rebuttal. Ms. Brooks, you may proceed with your argument. Thank you, Your Honor. May it please the Court of Counsel. I'm sorry, I have a pretty bad cold today. With respect to the argument, the first argument, the defendant has not shown an abuse of discretion. The standard here, I think, is they have to show, the prosecution here has to show more than a mere suspicion of bias. And the fact is that the trial court and the prosecutors, they presented evidence that this juror was infatuated with the defendant. And infatuation, I think, is definitely bias. I'm not sure where the defendant believes that you have to have a completely closed mind in order to be not considered fair and impartial, because here is an obvious situation of infatuation by the juror towards the defendant. This should be something that the trial court can rectify. And that's in addition to the fact that the juror was not paying attention to the evidence, and therefore, it's kind of hard to voir dire them about that. But so, in this situation, there's also no prejudice because the alternate juror was acceptable to the defendant. So, it gets back to the Campbell case. The defendant calls this a form of structural error, like they say they're denied their right to an impartial jury. Well, there's no right to have a particular juror on the panel. So, under the Campbell case here, the alternate juror was acceptable as an alternate, then they're actually acceptable as a regular juror as well. So, that's why the situation involves no prejudice, and so, therefore, it's not reversible. Ms. Brooks, this is a very unique case, right? I mean, have you found any case out there that would involve, what involves potentially a budding relationship between the defendant and a juror? No, no, I haven't. And it was kind of hard to research that. I mean, obviously, the concern would be that this witness might want to try to sabotage the trial, maybe in order to have an opportunity to further, it's a murder case. So, if she's convicting, this defendant is going away for a long time. That's going to make the sort of relationship they might have in mind if they are trying to develop a relationship with the defendant. So, yeah, I'm obviously very concerned about the state, which is entitled to a fair trial and a fair and impartial jury themselves, just like the defendant. So, I think the trial court acted reasonably here to ensure that this was a case of obvious bias. It's not merely a suspicion of bias, and there was no prejudice. Defendant did not have structural error or denial of their right to an impartial jury. So, for those reasons, with respect to the second part of this argument, which is that there's somehow a due process violation, I think the suggestion is that the prosecutor should have said when they first noticed this, oh, defense counsel here, we noticed something going on with this juror. Have you seen it or something like that, to talk about that beforehand, to believe that that's a reason to reverse a murder verdict of guilty and send it back for a new trial because they did not do that, in the sense that in this situation, the defendant himself is participating in these looks and glances back and forth, and the defendant obviously knows what this juror is doing. And so, to think that there's no communication between the defendant and the defense counsel about this situation, the judge even notices it. So, it's like, to think that the defense counsel was completely oblivious to what was going on with this juror, well, you think any reasonable defense attorney in a murder trial is going to be observing the juror pretty closely, particularly during the presentation of the prosecution's case, to see how they're reacting to it. And so, it's kind of really almost with bigger belief that the defense attorney himself didn't even know that this was going on. When the judge- Let's assume for a minute that the attorney didn't. What benefit is there in coming to some resolution of this issue by having the state notify defense counsel before they have accumulated any significant evidence whatsoever that this is what's happening? Well, there is real no benefit in terms of a due process analysis, because the defendant- the trial counsel could have called the defendant who saw this if they were having an adversarial hearing. And this is, you know, court is adversarial. So, to think that somehow this was not intended to be adversarial, I mean, the prosecution marshaled its evidence, and the defense attorney could have easily called the defendant to explain what they saw. And so, the defendant was obviously part of this. So, I mean, it's like there was an opportunity for the defendant. Now, whether that would be the only witness, perhaps, but at least that was something that they could have used, and they didn't even do that, probably because it would have hurt their argument for opposing removal of this juror, because I think the defendant would have had to truthfully testify exactly what was going on, and that would have only hurt the defense case. So, I think it's the idea that somehow other witnesses marshaled by the defendant, for example, defense supporters or other disinterested people that could have been brought in to observe this juror. I mean, there really wasn't any doubt with the credibility of the prosecution witnesses. So, I mean, this is not like kind of close case where somehow the defense could have been allowed to bring in more people than just the defendant to counter the suggestion of juror misconduct. To think that that could have happened here just is not true, because the prosecution witnesses were credible, they took detailed notes, and their observations aligned with the court that itself had noticed. So, to think that this could have been contested by the defense if they had had some sort of advance notice doesn't seem to be the case. And so, moving on to the other issues very, very briefly. The excited utterance, I think because of the records, contains the timing of phone call in which the excited utterance was made was 7-14. And the video showed Rashad Hill running at 7-13. So, that's only a minute before. So, I think it's pretty obvious that there's a shooting, the defendant and the other people run out. They're on video. Phone records shows when the call happened. So, there is an absence of time to fabricate. I think that's the element of excited utterance that was challenged here. So, one minute is obviously not a lot of time to fabricate. And also, it's not testimonial. So, if you talk to a friend in the immediate aftermath of a shooting, I don't believe there's any, there's no solemnity. It's not to 911 or anything official. This is not intended to be a substitute for testimony. A reasonable person in Rashad's Hill position would not have anticipated that his statement about why he was out of breath would be used in a prosecution. And of course, the error would be harmless because there's the connections between the defendant and his girlfriend's white Honda. He had the dark puffy coat, the black ski mask, his cell phone was pinging off the tower near the crime scene. So, for that reason, as an evidentiary here, it'd be harmless. And also, if it's constitutional error, it'd be harmless as well, beyond a reasonable doubt. For those reasons, the state would request this court to affirm the conviction. Thank you. All right. Thank you. Ms. Danik, rebuttal argument? Thank you, Your Honor. The standard set by the Illinois Supreme Court for the dismissal of an defendant is that it's closed off their mind as to the ultimate issue of guilt or innocence. This is more than just a mere suspicion. That's people versus Llewellyn, people versus Runge. In Patton v. Yount, the U.S. Supreme Court held that the standard for juror impartiality is whether the juror has such fixed opinions they could not judge impartially the guilt of the defendant. And that's the standard that the party seeking removal has to show. Case after case in has established that it must be more than mere speculation. It must be more than speculation. It must meet this high standard. Counsel, counsel, can I ask a question? Yes. Aren't you stuck with the court's ruling that the courts found that the jurors sort of stopped paying attention, closed their mind to what's going on in the courtroom? Again, Your Honor, with respect to the trial judge, there was no questioning of the juror to determine whether this juror was neurodivergent, looking elsewhere, focusing better by not looking at the witness, listening orally. The inquiry is about a mindset, the mindset of the juror. And again, to the extent that the judge made this finding without ever having had enough concern earlier on in the trial to have given an admonishment, ladies and gentlemen, please be reminded of the importance of your role here and that you need to be paying attention at all times or pulling that juror aside. If you recall, I think the trial court said he first noticed it on Thursday. Yes, Your Honor. And then paid more attention to it on Friday. So we're not talking about, contrary to your argument, we're not talking about the court sitting through the entire week suspecting there was something wrong. Court first noticed it at some point in time on Thursday and then started paying more attention on Friday. By that time, the state had also had people looking at the incident. So this really develops within the last day of the trial. So the argument that seems to be that, well, everybody sat in wait and ambushed the defendant, I would suggest is disingenuous since it all comes about in a matter of a day to a day and a half at the most. Your Honor, what the judge said was, quote, I planned on continuing to make note of what I was seeing before the close of evidence and bring it to the attention of the parties. But this ended up getting brought up sooner. And by sooner, they meant in the middle of the testimony of the state's final 26 witness. And so regardless of how much sooner, argument is that it was an abuse of the discretion for the judge to have based it on the state's argument that they made at the 11th hour in trial, solely on this sort of speculation, and whether that speculation was as to an alleged what these smiles may have meant, or whether this was speculation about whether the juror was paying attention or not, the actual record belies that finding by the judge in that it was never brought up. In fact, the judge's first thing that he said was simply that he didn't notice something improper from the juror. And so it really defies reason that suddenly by the end, he had found that something was so egregious, he had never felt the need to ever even admonish the juror earlier on, but instead let this juror remain. This juror he had so much concern about remain on the jury and was planning, you know, all the way up to the close of evidence. And so that was in part, the abuse of discretion that happened in this case. And for that reason, we ask that Mr. Bone's case be reversed for a new child. All right. Thank you, Ms. Danek. Thank you both. The court will take the case under advisement and will issue a written decision. Court stands in recess.